IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WELLS FARGO,

            Plaintiff,            CV-06-1515-ST

     v.            FINDINGS AND RECOMMENDATION

U.S. BANK,

            Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Wells Fargo, originally filed this action in Clackamas County Circuit Court for the State of Oregon, *Wells Fargo v. U.S. Bank*, Civil No. 06090762. On October 25, 2006, defendant, U.S. Bank National Association ("U.S. Bank"), filed a Notice of Removal (docket #1) pursuant to 28 USC § 1446.

For purposes of the present motion, this court assumes the truth of the allegations of the Complaint, as follows: Wells Fargo is the duly serving successor trustee of a trust created by

1 - FINDINGS AND RECOMMENDATION

Teresa Donnelly on July 7, 1972 ("the Trust").  Complaint, ¶ 1.  The Trust provides that upon the death of the settlor's son, Leland Arthur Donnelly, all income of the trust would be paid to Josephine McCarthy, until her death.  *Id*, ¶ 2.  Leland Arthur Donnelly died on December 28, 1977, and from that point forward, Wells Fargo or its predecessor trustee began paying the income of the Trust on a monthly basis to Josephine McCarthy, who died nearly nine years later on September 17, 1986.  *Id*, ¶¶ 3-4.  Beginning September 18, 1986, and continuing for nearly 18 years through July 2004, Millicent Meaney, Josephine McCarthy's daughter, received and fraudulently endorsed the checks made payable to her mother, depositing them into an account maintained in her name and held with U.S. Bank.  *Id*, ¶ 5.  Millicent Meaney died in August 2004, after improperly taking over $200,000.00 in trust funds.

Wells Fargo alleges a single claim for negligence against U.S. Bank for:  (1) failing to compare the signature on the back of each check with the signature card exemplar in its possession; (2) failing to learn that Josephine McCarthy was dead; and (3) allowing the checks from the Trust to be deposited into an account not owned by Josephine McCarthy.  *Id*, ¶ 8.

In its Notice of Removal, U.S. Bank asserts that Wells Fargo is a national banking association with its main office in Sioux Falls, South Dakota.  Notice of Removal, ¶ 5.  U.S. Bank is also a national banking association with its main office in Cincinnati, Ohio.  *Id*.  The amount in controversy exceeds $75,000.00.  Thus, this court has jurisdiction under 28 USC § 1332.  U.S. Bank has now filed a Motion to Dismiss (docket #2).  For the reasons that follow, the motion should be GRANTED.

///

**STANDARDS**

In evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F3d 940, 946 (9th Cir 2005).

**DISCUSSION**

U.S. Bank contends that Oregon's economic loss rule is a complete bar to Wells Fargo's negligence claim. Oregon law allows a negligence claim for economic loss only against a defendant who has a special relationship with the plaintiff. "When a claim based on negligence seeks recovery for economic damages only, the claim must be predicated on some duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." *Lewis-Williamson v. Grange Mut. Ins. Co.*, 179 Or App 491, 493, 39 P3d 947, 949 (2002), citing *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or 149, 159, 842 P2d 890, 896 (1992). The Oregon Supreme Court "use[s] the term 'economic losses' to describe financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." *Onita Pac. Corp.*, 315 Or at 159 n6, 842 P2d at 896 n6, citing *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.*, 290 Or 909, 627 P2d 469 (1981).

Wells Fargo counters that its claim is not for economic losses only, but instead is a claim for injury to property. In particular, Wells Fargo argues that economic loss rule applies only when a plaintiff alleges some future impairment of an ongoing business or enterprise (such as

3 - FINDINGS AND RECOMMENDATION

lost profits or a decline in stock value) and not to cases such as this one where Wells Fargo simply seeks recovery of a known amount of funds.

However, the only claim Wells Fargo alleges is that U.S. Bank negligently caused Wells Fargo to pay trust proceeds to Millicent Meaney which belonged to Josephine McCarthy. This court agrees with U.S. Bank that fungible money, such as trust income, is not "property" under the economic loss doctrine.

The difficulty with Wells Fargo's argument is that Oregon courts have not limited the application of the rule to cases where a plaintiff seeks damages for future impairment of an ongoing business or enterprise and have not revisited *Onita's* definition of "economic losses." To the contrary, in *Vtech Communications, Inc. v. Robert Half, Inc.*, 190 Or App 81, 89-90, 77 P3d 1154, 1158-59 (2003), *review dismissed*, 337 Or 547, 100 P3d 217 (2004), an employer brought a negligence claim against the temporary placement agency that provided it with a temporary-to-permanent payroll clerk who then allegedly embezzled over $1.3 million from the employer. Because there was no evidence that the agency had assumed responsibility to further the economic interests of the employer, and there was no special relationship between the employer and the temporary placement agency, the Oregon Court of Appeals affirmed summary judgment against the negligence claim. The court never suggested that the loss of the embezzled money – analogous to the loss of the trust money here – was a loss to "property" which precluded application of the economic loss doctrine. Other cases also do not suggest the analysis suggested by Wells Fargo. *See*, *Moore Excavating v. Consolidated Supply*, 186 Or App 324, 63 P3d 592 (2003) (no indication that plaintiff sought damages for future impairment of an ongoing business or enterprise); *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 914 P2d 16

4 - FINDINGS AND RECOMMENDATION

(1996) (economic loss rule applied to bar a negligence claim against tenant screening company to recover money paid by the landlord after tenant screened by service attacked fellow tenant).

Instead, the Oregon Supreme Court has noted that "[w]hether the claim is characterized as one for economic loss, interference with economic expectancy, or prospective economic advantage, recovery is normally denied." *Ore-Ida Foods, Inc.*, 290 Or at 916, 627 P2d at 473 (footnotes and citations omitted). No different result suggested by a more recent cases which simply reiterate that the scope of any special duty may be restricted by common-law principles:

> [T]o recover purely economic losses, a plaintiff must plead some source of duty outside of the common law of negligence. Such a duty arises only in attorney-client, architect-client, agent-principal, and similar relationships where the professional owes a duty of care to further the economic interests of the "client." . . . [A] particular source for the duty to protect from economic losses is required even if economic losses are a foreseeable consequence of a defendant's conduct. Thus, a plaintiff must first show the *existence* of a special relationship in which the defendant had some obligation to pursue the plaintiff's economic interests. Only then does [the] foreseeability analysis come in to play.

*Roberts v. Fearey*, 162 Or App 546, 549-50, 986 P2d 690, 692-93 (1999) (citations omitted; emphasis in original); *see also*, *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 342, 83 P3d 322, 329 (2004) ("Thus, . . . when a plaintiff alleges a special relationship as the basis for the defendant's duty, the scope of that duty may be defined or limited by common-law principles such as foreseeability.") (footnote and citations omitted). In sum, although the foreseeability of damages affects the analysis of a negligence claim seeking economic losses, it only does so once plaintiff establishes a special relationship sufficient to support the claim in the first instance.

5 - FINDINGS AND RECOMMENDATION

The recent case of *Harris v. Suniga,* -- P3d – , 2006 WL 3501313 (Or App Dec 06, 2006), does not change the analysis. Plaintiffs, the owners of apartment buildings purchased from a prior owner, sued the builder for negligent construction. The builder argued that the claim was barred by Oregon's economic loss rule because the damage to the apartment buildings is, in effect, an economic loss to plaintiffs' investment. The court reiterated Oregon's economic loss doctrine. However, it noted that "the fact that prior cases have defined 'economic losses' to include financial losses to intangibles does not necessarily mean that the term is limited to such losses." *Id* at *4. Following *Newman v. Tualatin Devel. Co., Inc.*, 287 Or 47, 597 P2d 800 (1979), which it deemed "materially indistinguishable," it held that the plaintiffs' claim for construction defects in an apartment building does not involve economic losses. *Id* at *5.

This case is clearly distinguishable from *Newman* and *Harris*. It does not involve damage to a building. The only loss at issue here is fungible money. Wells Fargo asserts that it sustained a purely economic loss by means of U.S. Bank presenting for payment checks fraudulently endorsed by Millicent Meaney.

Because the nature of this negligence claim is one for only economic loss, Wells Fargo must allege a duty owed by U.S. Bank beyond the common-law duty to exercise reasonable care. According to Wells Fargo, U.S. Bank allegedly repeatedly allowed Millicent Meaney to deposit checks drawn by the Trust and payable to Josephine McCarthy into an account maintained in Millicent Meaney's name and held with U.S. Bank. U.S. Bank then presented those checks to a drawee bank for payment. In an effort to establish the requisite special relationship, Wells Fargo first argues that U.S. Bank was the only entity capable of representing that McCarthy's signature

6 - FINDINGS AND RECOMMENDATION

was valid.[1]  However, the issue is not whether U.S. Bank had the *ability* to ferret out forgeries of McCarthy's signature, but whether the relationship between U.S. Bank and gave rise to the "enhanced duty" required to support Wells Fargo's negligence claim against U.S. Bank. *Lewis-Williamson*, 179 Or App at 493, 39 P3d at 949.

It is well established that there is no special relationship between a bank and its depositors.  Instead, the relationship is "a highly regulated, arms length commercial relationship in which the bank's ability to act vis-a-vis its depositors is expressly limited." *Stevens v. First Interstate Bank*, 167 Or App 280, 287, 999 P2d 551, 554, *rev denied*, 331 Or 429, 26 P3d 148 (2000).  Moreover, unlike that "highly regulated" or contractual relationship between U.S. Bank and Josephine McCarthy and/or Millicent Meaney, Wells Fargo has not alleged any contractual relationship with U.S. Bank.  Nevertheless, Wells Fargo contends that a special duty running from U.S. Bank to Wells Fargo is evident in Oregon's statute on presentment warranties, which provides:

> (1) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, the person obtaining payment or acceptance, at the time of presentment, and a previous transferor of the draft, at the time of transfer, warrant to the drawee making payment or accepting the draft in good faith that:
>
> > (a) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of the person entitled to enforce the draft; . . . .

---

[1] Presumably, this capability was based on the possession by U.S. Bank of an endorsement card bearing McCarthy's signature.  While Wells Fargo may not have enjoyed access to that endorsement card, it was not entirely without fault, given that it continued to write checks to Josephine McCarthy after her death, and Millicent Meany's estate is apparently unable to repay the full amount of the funds improvidently taken from the rightful heirs of Josephine McCarthy.

7 - FINDINGS AND RECOMMENDATION

ORS 73.0417.

The Complaint does not allege whether Wells Fargo is the drawee[2] of the allegedly fraudulently endorsed checks. But assuming that Wells Fargo is both the drawer[3] and the drawee, this provision allows Wells Fargo to recover damages for the breach of presentment warranties, subject to any statutory limitations. However, as presently pled, Wells Fargo's claim is not a statutory claim for breach of a presentment warranty, and nothing suggests that the existence of this potential statutory claim creates a special duty between Wells Fargo and U.S. Bank sufficient to buttress Wells Fargo's negligence claim.

Thus, Wells Fargo's negligence claim falls squarely within Oregon's economic loss rule. Wells Fargo has failed to allege any special relationship with U.S. Bank which would prevent application of that rule. Accordingly, this court concludes that Wells Fargo's negligence claim is barred.

The more appropriate remedy for Wells Fargo may well be a claim under the Uniform Commercial Code. However, such a claim may be largely time-barred and Wells Fargo has not sought leave to amend to add such a claim. At oral argument, Wells Fargo sought leave to amend under the federal pleading standards. However, as discussed above, at least as to Wells Fargo's negligence claim, any such amendment would be futile.

///

///

---

[2] The "drawee" is the "person ordered in a draft to make payment." ORS 73.0103(b).

[3] The "drawer" is the "person who signs or is identified in a draft as a person ordering payment." ORS 73.0103(c). Wells Fargo (or its predecessor trustee) is presumably the drawer of the checks made payable to Josephine McCarthy, given that Wells Fargo alleges that it "began paying the income of the trust on a monthly basis to Josephine McCarthy." Complaint, ¶ 3.

8 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

For the reasons stated above, defendant's Motion to Dismiss (docket #2) should be GRANTED.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **January 9, 2007.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 19th day of December, 2006.

           ___/s/ Janice M. Stewart_____
           Janice M. Stewart
           United States Magistrate Judge